IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


FRED E. HONRINE,
      Petitioner,

vs.                            Case No. 5:07cv227/MCR/EMT

WALTER A. McNEIL,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer to the petition and relevant portions of the state court record (Doc. 11).  Although Petitioner was provided an opportunity to file a reply (*see* Docs. 12, 15), he declined to do so.

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 11, Exhibits).  Petitioner was charged in the Circuit Court in and for Calhoun County, Florida, with sexual battery on a child under twelve (12) years of age, a capital felony (Doc. 11, Ex. A at 39).  On November 6, 2002, Petitioner entered into a written plea agreement whereby Petitioner agreed to plead guilty to a lesser offense of attempted sexual battery

on a child under twelve (12) years of age, and the State agreed to a sentence of two (2) years of community control followed by twenty (20) years of probation, with sexual offender conditions (*id.* at 41–42).  The same day, Petitioner was adjudicated guilty of attempted sexual battery on a person less than twelve (12) years of age and sentenced to two (2) years of community control followed by twenty (20) years of probation, with the sexual offender conditions listed in an attachment to the judgment (*id.* at 43–45).

On February 11, 2003, the State filed a Notice of Intent to Seek Sexual Predator Designation (Doc. 11, Ex. A at 47).  Petitioner, through counsel, filed a motion to declare The Florida Sexual Predators Act unconstitutional (*id.* at 50–51).  The trial court held a hearing on the State's notice on February 19, 2003 (*id.* at 48–62).  The trial court denied Petitioner's motion and designated Petitioner a sexual predator pursuant to Florida Statutes section 775.21 (*id.* at 50–54, 58–59, 63).  Also at the February 19 hearing, the State requested a "change in [Petitioner's] status" from community control to probation with the additional condition that Petitioner be placed on electronic monitoring (Doc. 11, Ex. A at 53, 54–58).  The court stated it would not rule on the issue because adding the condition would amend the plea agreement, therefore, Petitioner's consent was required (*id.* at 58).

Petitioner timely appealed the court's order designating him a sexual predator to the Florida First District Court of Appeal (First DCA), claiming that The Florida Sexual Predators Act was unconstitutional  (Doc. 11, Ex. B, C, D, E).  The First DCA affirmed the trial court's decision per curiam on March 5, 2004 (Doc. 11, Ex. F).  Honrine v. State, No. 1D03-1027, 2004 WL  400997 (Fla. 1st DCA Mar. 5, 2004).  Petitioner filed a motion to stay the mandate, which the First DCA granted (*id.*, Exs. G, H).  On December 29, 2005, the First DCA withdrew its earlier opinion and again affirmed the trial court's decision per curiam (*id.*, Ex. I).  Honrine v. State, 917 So. 2d 349 (Fla. 1st DCA Dec. 29, 2005).  The mandate issued January 17, 2006 (*id.*, Ex. J).

On October 15, 2003, while the appeal of the sexual predator order was pending, the trial court entered an order modifying Petitioner's community control, nunc pro tunc to February 19, 2003 (Doc. 11, Ex. A at 66).  Pursuant to the order, Petitioner's community control was "reduced to probation," and a special condition of electronic monitoring was added (*id.*).  Petitioner did not appeal this order.

On May 10, 2004, Petitioner's probation officer filed an affidavit alleging that Petitioner violated a condition of his probation by possessing obscene or pornographic material (Doc. 11, Ex. A at 67).  At a hearing on July 7, 2004, Petitioner admitted the violation, and the court revoked his probation and sentenced him to fifteen (15) years of imprisonment (*id.* at 70–81, 84–88).  Petitioner appealed the revocation order and sentence to the First DCA (Doc. 11, Exs. K, L, M, N).  The First DCA affirmed the judgment per curiam without written opinion on February 3, 2005, with the mandate issuing March 1, 2005 (Doc. 11, Exs. O, P).  Honrine v. State, 894 So. 2d 247 (Fla. 1st DCA Feb. 3, 2005).

On July 8, 2005, Petitioner field a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 11, Ex. A at 1–12).  The trial court summarily denied relief on May 24, 2006 (*id.* at 142–71).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on February 20, 2007, with the mandate issuing March 20, 2007 (Doc. 11, Exs. Q, R).  Honrine v. State, 950 So. 2d 416 (Fla. 1st DCA Feb. 20, 2007).

Petitioner filed the instant habeas action on September 20, 2007 (Doc. 1 at 3).  Respondent concedes that the petition is timely (Doc. 11 at 8).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State court
> proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams</u>

<u>v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1]  The appropriate test was

described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may
> issue only if one of the following two conditions is satisfied—the state court
> adjudication resulted in a decision that (1) "was contrary to . . . clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."  Under the "contrary to"
> clause, a federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this court on a question of law or if the state
> court decides a case differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the correct governing
> legal principle from this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct.

2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed

that on any issue raised in a federal habeas petition upon which there has been an adjudication on

the merits in a formal State court proceeding, the federal court should first ascertain the "clearly

established Federal law," namely, "the governing legal principle or principles set forth by the

Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S.

63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme

Court precedent at the time "would have compelled a particular result in the case."  <u>Neelley v.</u>

---

[1]Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

<u>Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting <u>Williams</u>, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* <u>Bell v. Cone</u>, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous

application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." <u>Williams</u>, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti v. Quarterman</u>, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

    A.    <u>Ground one:  Counsel was ineffective for failing to object to a violation of double jeopardy prohibitions.</u>

Petitioner claims that his trial counsel performed deficiently by failing to object to the court's modification of his sentence on February 19, 2003, and October 15, 2003, to include sexual predator designation and an electronic monitoring condition, on the ground that such modification violated the constitutional prohibition against double jeopardy (Doc. 1 at 2).

       1.      Clearly Established Supreme Court Law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. To establish a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In determining whether counsel gave adequate assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. 466 U.S. at 690. Counsel's performance is deficient only if it falls outside the wide range of reasonable professional assistance. Id. at 689. The Supreme Court has defined prejudice as a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. If the petitioner cannot meet one of Strickland's prongs, the court need not address the other prong. Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

       2.      Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 motion (Doc. 11, Ex. A at 8, 16–17). The state court determined that sexual predator designation did not constitute punishment under Florida law; therefore, such designation did not violate double jeopardy principles (see Doc. 11, Ex. A at 142). The state court did not specifically cite to any United States Supreme Court case for the standard to be applied in resolving Petitioner's claim; however, Petitioner identified Strickland as the controlling law governing ineffective assistance of counsel claims (see Doc. 1, Ex. A at 16). Furthermore, as previously noted, a state court is not required to cite United States Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early, 537 U.S. at 8. In the instant case, the state court's reasoning did not contradict Strickland. The state court determined that no meritorious basis for a double jeopardy

argument existed, therefore, Petitioner did not receive ineffective assistance of counsel.   This reasoning does not contradict the requirement that Petitioner show that counsel performed deficiently, that is, in a manner that no reasonable counsel would perform, and that Petitioner show a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different.   Additionally, Petitioner has not shown that the state court reached an opposite conclusion from the United States Supreme Court on a question of law, and Petitioner has not identified any United States Supreme Court case with a set of materially indistinguishable facts that was decided differently from his case, nor is the court aware of any such case.   Therefore, Petitioner has failed to show that the state court's decision was contrary to Supreme Court law.

To qualify for relief, Petitioner must therefore demonstrate that the state court's decision constituted an unreasonable application of <u>Strickland</u>.   As discussed *infra*, the undersigned concludes that Petitioner has failed to satisfy his burden in this regard.

        a.    <u>Failure to object to sexual predator designation on double jeopardy grounds</u>

It is well established within Supreme Court jurisprudence that the Double Jeopardy Clause bars multiple punishments for the same offense.   <u>Missouri v. Hunter</u>, 459 U.S. 359, 366, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535 (1983); <u>North Carolina v. Pearce</u>, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed.2d 656 (1969), *overruleld on other grounds by* <u>Alabama v. Smith</u>, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989).   Analysis of whether a double jeopardy violation occurred thus turns on the determination of whether the challenged provision constitutes punishment.   The Supreme Court, in analyzing a Kansas statutory scheme of civil commitment for sexual predators found that such civil commitment does not violate double jeopardy.   *See* <u>Kansas v. Hendricks</u>, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997).   The Court found that as long as a statutory scheme is civil in nature and designed to protect the public from harm, the scheme does not qualify as punitive for double jeopardy purposes unless it is shown by "the clearest proof that the scheme is so punitive in purpose or effect as to negate [the State's] intention to deem it civil." *Id.*, 521 U.S. at 361–62.

The Florida Sexual Predators Act, set forth in section 775.21(3), Florida Statutes, clearly states the purpose of the Act and the intent of the Legislature in enacting the Act:

(d)  It is the purpose of the Legislature that, upon the court's written finding that an offender is a sexual predator, in order to protect the public, it is necessary that the sexual predator be registered with the department and that members of the community and the public be notified of the sexual predator's presence.  **The designation of a person as a sexual predator is neither a sentence nor a punishment but simply a status resulting from the conviction of certain crimes.**

(e) It is the intent of the Legislature to address the problem of sexual predators by:

    1.  Requiring sexual predators supervised in the community to have special conditions of supervision and to be supervised by probation officers with low caseloads;

    2.  Requiring sexual predators to register with the Florida Department of Law Enforcement, as provided in this section; and

    3.  Requiring community and public notification of the presence of a sexual predator, as provided in this section.

Fla. Stat. § 775.21(d, e) (emphasis added).  The language of the Act itself establishes that the purpose of the Act is to protect the public, not punish the defendant.  Furthermore, the effect of the Act is not so punitive as to negate the State's intention to deem it civil.  All that the Act requires of a defendant is that he provide the following information to law enforcement and keep the information updated:  his name, social security number, age, race, sex, date of birth, height, weight, hair and eye color, photograph, address of legal residence and address of any current temporary residence (if the address is a trailer or boat, the defendant must provide additional information), any electronic mail address and any instant message name, date and place of any employment (if the defendant is enrolled or employed at an educational institution, he must provide additional information), date and place of each conviction, fingerprints, a brief description of the crime or crimes he committed, and other information that the law enforcement agency deems necessary. Fla. Stat. § 775.21(6)(a–e).  A defendant must obtain a Florida driver's license or identification card which identifies him as a sexual predator, and notify law enforcement if he intends to reside in another state.  *Id.*, § 775.21(6)(f, g).  The effect of the Act's public notification provisions is that the public is notified of the defendant's name and current address, physical description (including a photograph), the circumstances of his offense, and whether the victim was a minor or adult.  *Id.*, §

775.21(7).  Because neither the purpose nor effect of the Act is so punitive to overcome the civil nature intended by the Legislature, the Act is not punitive for double jeopardy purposes.  The Florida courts have likewise held that the sexual predator designation and corresponding requirements were not so punitive as to negate the state legislature's clear non-punitive intent; therefore, the designation was not "punishment" for double jeopardy purposes.  Collie v. State, 710 So. 2d 1000 (Fla. 2d DCA 1998).  Indeed, the state post-conviction court in Petitioner's case relied upon Collie in determining that sexual predator designation did not constitute punishment under Florida law; therefore, no legal basis existed for challenging such designation on double jeopardy grounds (see Doc. 11, Ex. A at 142).

In light of the conclusion that The Florida Sexual Predators Act is civil in nature, Petitioner failed to demonstrate that his counsel had a meritorious basis for challenging the sexual predator designation on double jeopardy grounds, or that there was a reasonable probability that the result of the proceeding would have different if counsel had interposed such a challenge.  Accordingly, the state court's denial of this claim was not an unreasonable application of Strickland.

> **b.**  **Failure to object to addition of electronic monitoring condition on double jeopardy grounds**

The state court made no factual findings on this issue, nor did the court make any determinations of state law relating to this issue; therefore, the undersigned is left to examine whether the state court's denial of this sub-claim was an unreasonable application of Strickland.

Initially, Respondent's argument that the modification from community control to probation did not implicate double jeopardy protections because it did not increase Petitioner's punishment is unconvincing.  Respondent contends community control in Florida is a more severe and restrictive alternative to probation (Doc. 11 at 14–15).  Respondent argues that it appears the Department of Corrections (DOC), which is charged with supervising defendants on probation and community control, intended to give Petitioner a less restrictive sanction by seeking to have his supervision changed from community control to probation (id. at 15).  Respondent's suggestion that the DOC intended to lessen the restrictions on Petitioner is not supported by the record.  It is clear from the transcript of the February 19, 2003 hearing that the sole purpose of the State's seeking a "change in [Petitioner's] status" from community control to probation was to impose a judicially enforceable

electronic monitoring requirement upon Petitioner, since the court expressly chose not to include this condition as part of Petitioner's sentence on November 6, 2002 (*see* Doc. 11, Ex. A at 43–45, 54–58). At the time of Petitioner's plea and sentencing in 2002, Florida law required sentencing courts to impose an electronic monitoring condition on persons placed on sexual offender probation but not on persons placed on community control, like Petitioner, *see* Florida Statutes section 948.03(5)(b) (effective July 1, 2001 to January 6, 2003).[2] Florida law at that time further provided that the DOC had discretion to electronically monitor an offender sentenced to community control, *see* Florida Statutes section 948.03(3)(a); however, a defendant's failure to comply with the monitoring was not judicially enforceable. *See* Anthony v. State, 854 So. 2d 744 (Fla. 2d DCA 2003); Carson v. State, 531 So. 2d 1069 (Fla. 4th DCA 1988). The State obviously recognized that Petitioner's status as a "community controlee" instead of a probationer allowed him to avoid the electronic monitoring requirement, and that changing Petitioner's "status" to probation would automatically subject him to electronic monitoring. Thus, to the extent the DOC's intention in requesting the change in status is relevant, the record does not support Respondent's assertion that the intent was to relax the restrictions on Petitioner. It is also clear from the discussion between the trial judge, Petitioner, and DOC representatives at the February 19, 2003 hearing, that the addition of the electronic monitoring requirement would render Petitioner's supervision more onerous because it would have expanded Petitioner's exposure to a possible violation (*id.*).

Furthermore, under Florida law, the change in Petitioner's sentence was in the nature of an enhancement not a modification. In Lippman v. State, the Florida Supreme Court determined that it was error for the trial court to increase Lippman's conditions of probation by adding the requirement that he not have any contact with the minor victim or his minor siblings because it constituted an additional punishment proscribed by the double jeopardy clause. 633 So. 2d 1061, 1062 (Fla. 1994). The court determined that the addition was not a modification, but instead an enhancement. *Id.* at 1063. The court did state that if there was a provision in the original order which could be interpreted to include this condition, such as following the recommendations of a

---

[2]In 2004, section 948.03(5) was redesignated as section 948.30, and in 2005 that statute was amended to include persons placed on community control in the requirement that sentencing courts impose an electronic monitoring condition, *see* Laws of Florida 2005, c. 2005-28, § 20.

psychiatrist, then it would be viewed as a modification.  *Id.* at 1063 n. 2.  Following Lippman, the
Florida Second District Court of Appeal determined in Cole v. State that where the defendant's
original order of probation did not contain anything which could be interpreted as having a
connection with a new condition of restricting contact with his ex-wife, son, and daughter, the
addition of such a condition constituted an enhancement of the original sentence rather than a
modification.  745 So. 2d 1001, 1002 (Fla. 2d DCA 1999).  In the instant case, the original judgment
and sentence setting forth the conditions of Petitioner's community control did not contain anything
which could be interpreted as having a connection with the new condition of electronic monitoring;
therefore, the undersigned rejects Respondent's characterization of the addition of the electronic
monitoring condition as anything but a sentence enhancement.  *See* Lippman, Cole, *supra.*

Having concluded that the addition of the electronic monitoring condition constituted an
enhancement of Petitioner's original sentence, the next question is whether the enhancement violated
double jeopardy principles.  Both federal and Florida courts recognize that the Double Jeopardy
Clause protects the defendant's "legitimate expectations" as to the length of his sentence.  *See*
United States v. Jones, 722 F.2d 632 (11th Cir. 1983) (defendant has legitimate expectation in
finality of originally-imposed sentence even though sentencing court subsequently discovered that
it relied on erroneous information in imposing sentence, if defendant was not source of erroneous
information upon which court relied; in such circumstances, court had no power to resentence
defendant to greater term of incarceration) (citing United States v. DiFrancesco, 449 U.S. 117,
135–36, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980)); Lippman, 633 So. 2d at 1062–63 (where there was
no provision in original sentencing order which could be interpreted to include no-contact condition,
such as following the recommendations of a psychiatrist, addition of requirement that defendant not
have any contact with victim or victim's minor siblings was not a modification of defendant's
sentence, but instead an enhancement and, therefore, constituted an additional punishment
proscribed by the double jeopardy clause); Troupe v. Rowe, 283 So. 2d 857 (Fla. 1973) (where
voluntary plea of guilty was entered and sentence imposed and hearing concluded, it was not the
privilege of the State to reargue the presentence issue of adjudication versus "finding" of guilt upon
which the trial court had already ruled; jeopardy had attached and sentence which had been imposed
could not thereafter be increased); Cole, 745 So. 2d at 1002 (new condition of probation constituted

enhancement of original sentence rather than modification, and thus was void and violated double jeopardy); Anderson v. State, 444 So. 2d 1109, 1110 (Fla. 3d DCA 1984) (in the absence of any record basis for modifying terms of probation, order enhancing conditions of probation by prohibiting defendant from engaging in gambling activity placed defendant in double jeopardy).

Under certain circumstances, however, a defendant's legitimate expectations as to his original sentence are not defeated by a subsequent increase, for example, if the original sentence is increased on appeal, if the original sentence is illegal and subsequently increased to bring it in to compliance with the law, if the original sentence is based upon erroneous information supplied to the court by the defendant himself and the court subsequently discovers the error, or if the defendant is subject to supervision which is subsequently revoked due to his violation of the conditions thereof and the court imposes a more onerous sentence.  *See* Di Francesco, 449 U.S. at 137, 139 (due to existence of provisions in dangerous special offender statutes which authorized appellate court to increase sentence that had been imposed by trial court, defendant's legitimate expectations as to finality of original sentence were not defeated by appellate court's increase in sentence on appeal); Bozza v. United States, 330 U.S. 160, 166–67, 67 S. Ct. 645, 91 L. Ed. 818  (1947) (where statute required a fine and imprisonment, but judge imposed imprisonment only, after which defendant was taken to a federal detention jail, and about five hours later the defendant was recalled and a sentence in conformity with the statute was imposed, the defendant was not put in "double jeopardy" and the sentence was valid).  None of these circumstances are present in the instant case.  The addition of the electronic monitoring requirement was not the result of an appeal of Petitioner's sentence.  Additionally, the absence of the electronic monitoring requirement did not render his original sentence illegal.  As previously noted, the Florida law governing the terms and conditions of probation or community control in effect at the time of Petitioner's offense in 2001 and his plea and sentencing in 2002, provided as follows:

> (5)  Conditions imposed pursuant to this subsection, as specified in paragraphs (a) and (b), do not require oral pronouncement at the time of sentencing and shall be considered standard conditions of probation or community control for offenders specified in this subsection.
> . . . .
>> (b)  Effective for a probationer or community controllee whose crime was committed on or after October 1, 1997, **and who is placed on sex offender**

> **probation** for a violation of chapter 794, s. 800.04, s. 827.071, or s.
> 847.0145, in addition to any other provision of this subsection, the court must
> impose the following conditions of probation or community control:
>
> . . . .
>
> > 5. Electronic monitoring when deemed necessary by the community
> > control or probation officer and his or her supervisor, and ordered by
> > the court at the recommendation of the Department of Corrections.

Fla. Stat. § 948.03(5) (effective July 1, 2001 to January 6, 2003) (emphasis added).  When Petitioner
was sentenced, he was not placed on sex offender probation; therefore, the court was not required
to impose the electronic monitoring condition set forth in 948.03(5)(b).  Therefore, Petitioner's
sentence to community control supervision without the condition of electronic monitoring was not
illegal under state law.  Additionally, there is no indication that the omission of an electronic
monitoring condition of Petitioner's original sentence was due to Petitioner's withholding or
misrepresenting information to the sentencing court.  Finally, this was not a case where the court
was modifying Petitioner's sentence upon violation of the conditions of his supervision as no such
violation had occurred in 2003, when the court added the electronic monitoring condition.  In the
absence of any circumstance providing legal justification for the court to subsequently enhance
Petitioner's original sentence to include the electronic monitoring condition, such enhancement
constituted an increase in Petitioner's punishment in violation of the Double Jeopardy Clause.

Although it was clear under the law available at the time of rendition of the "modification"
order on October 15, 2003, that the addition of the electronic monitoring requirement constituted
an enhancement or increase in Petitioner's original sentence in violation of double jeopardy
principles, there is no indication in the record that Petitioner's counsel was aware that the court had
added the electronic monitoring condition to Petitioner's sentence.  At the February 19, 2003
hearing, at which counsel was present, the judge stated that he was not ruling on the matter (Doc.
11, Ex. A at 58).  Furthermore, although the record indicates that defense counsel received a copy
of the order designating Petitioner a sexual predator (*see id.* at 161), there is no indication that
counsel received a copy of the October 15, 2003 order adding the electronic monitoring condition

(*see id.* at 66, 162).[3]  Although the record shows that Petitioner's counsel was aware of the addition of the electronic monitoring condition during the revocation proceedings that were initiated in May of 2004,[4] by that time the issue of the legality of the addition of electronic monitoring was moot because Petitioner admitted he violated an unrelated condition of his supervision on April 29, 2004, specifically, possession of pornography, and his original sentence was modified to only a term of imprisonment with no probation to follow and no other conditions imposed (*see id.* at 80, 84–88). Therefore, Petitioner failed to demonstrate that his counsel performed deficiently by failing to challenge the sentence enhancement on double jeopardy grounds.

Additionally, by the time Petitioner filed his Rule 3.850 motion raising this ineffective assistance of counsel claim, any claim of Strickland prejudice was moot.  If counsel had challenged the enhancement, there is no question the state appellate court would have vacated the October 15, 2003 order which imposed the electronic monitoring condition.  *See* Anderson, 444 So. 2d at 1110 (vacating portion of trial court's order which prohibited defendant from engaging in gambling activity because enhancing conditions of probation to include gambling prohibition violated double jeopardy).  However, at the time the state post-conviction court adjudicated Petitioner's ineffective assistance of counsel claim in 2006, Petitioner was no longer subject to the electronic monitoring condition because his sentence had been modified in 2004 to a term of incarceration upon the trial court's revocation of his probation for violation of another condition of his supervision (*see* Doc. 11, Ex. A at 70–88).  The fact that when Petitioner filed his Rule 3.850 motion in July of 2005, he was no longer subject to the electronic monitoring condition which served as the basis for his underlying ineffective assistance of counsel claim, together with the fact that his imprisonment was not the result of a violation of that condition, rendered moot his claim that he was prejudiced by counsel's failure to challenge the addition of the electronic monitoring condition.  Therefore, the undersigned cannot conclude that the state court's denial of Petitioner's claim was an unreasonable

---

[3]Petitioner did not allege, either in the state court proceedings or the instant federal action, facts suggesting his counsel was actually notified that the electronic monitoring condition had been added in October of 2003.

[4]Defense counsel was appointed to represent Petitioner for the revocation proceedings, and the addition of the electronic monitoring condition was referenced in the violation report and affidavit filed by Petitioner's probation officer in May of 2004 (*see* Doc. 11, Ex. A at 67–69), and the electronic monitoring was discussed at the revocation hearing two months later (*see id.* at 75, 77).

application of <u>Strickland</u>.  *See* <u>Lott v. Hargett</u>, 80 F.3d 161, 167 (5th Cir. 1996) (habeas petitioner's trial counsel may very well have been performed deficiently at 1982 sentencing hearing because he failed to advise petitioner that trial court could not legally sentence him to life in prison; however, prejudice which petitioner suffered as a result of counsel's failure was cured when petitioner was resentenced in 1982 to forty (40) years, beginning in 1982, which rendered his ineffective assistance of counsel claim moot); <u>Evans v. Thompson</u>, 881 F.2d 117, 124 (4th Cir. 1989) (petitioner could not demonstrate he was prejudiced by appellate counsel's failure to raise sentencing error because petitioner's original sentence was vacated in subsequent post-conviction proceeding, and he was resentenced free of error; therefore any claims of prejudice from appellate counsel's error were mooted).  Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

> B.     <u>Ground two:  Counsel was ineffective for failing to inform the Defendant that his original plea was rendered involuntary by virtue of its illegality and the State's breach of the plea agreement.</u>

Petitioner contends his counsel should have advised him that the State's seeking sexual predator designation and the addition of the electronic monitoring condition as part of his sentence constituted a breach of the plea agreement and provided a basis for him to withdraw his plea because such actions modified the terms of the plea agreement without his consent (Doc. 1 at 2).  Petitioner states if counsel had informed him that the sexual predator designation and addition of the electronic monitoring condition breached the plea agreement, he would have withdrawn his plea and taken his case to trial (*id.* at 3).

> 1.     Clearly Established Supreme Court Law

When a defendant challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), applies. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).  As previously discussed, to obtain relief under <u>Strickland</u>, Petitioner must establish:  (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  <u>Strickland</u>, 466 U.S. at 688.

The focus of inquiry under the performance prong of the <u>Strickland</u> standard is whether counsel's assistance was "reasonable considering all the circumstances." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

<u>McMann v. Richardson</u>, 397 U.S. 759, 769-70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

To succeed on an ineffective assistance claim, Petitioner must rebut a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 690; *see also* <u>Smith v. Singletary</u>, 170 F.3d 1051, 1053 (11th Cir. 1999); <u>Harich v. Dugger</u>, 844 F.2d 1464, 1469 (11th Cir. 1988); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Indeed, Petitioner must demonstrate that counsel committed "serious derelictions" of his duty. <u>Stano v. Dugger</u>, 921 F.2d 1125, 1150–51 (11th Cir. 1991). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." <u>Wofford v. Wainwright</u>, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal

proceedings and then to advise the client as to the merits of each.  <u>Stano</u>, 921 F.2d at 1152 (citations omitted).

The second prong of the <u>Strickland</u> analysis requires Petitioner to show that he was prejudiced as a result of counsel's deficient performance.  To satisfy this element, Petitioner must come forth with objective evidence showing that but for counsel's errors, he would not have accepted the plea offer and would have insisted on going to trial.  *See* <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991); <u>Toro v. Fairman</u>, 940 F.2d 1065, 1068 (7th Cir. 1991).  Conclusory, after-the-fact statements that Petitioner would not have pled guilty do not meet this requirement. *See* <u>Diaz</u>, *supra*; *see also* <u>Toro</u>, *supra*; <u>Johnson v. Duckworth</u>, 793 F.2d 898, 902 n.3 (7th Cir. 1986); <u>United States v. Gordon</u>, 156 F.3d 376, 380–81 (2d Cir. 1998); <u>United States v. Gordon</u>, 4 F.3d 1567, 1570 (10th Cir. 1993).

　　　2.　　　Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 motion (Doc. 11, Ex. A at 9, 18–22).  He argued that counsel should have advised him that the State breached the plea agreement by seeking sexual predator designation and seeking to add the electronic monitoring condition to his sentence (*id.* at 18–21).  Petitioner asserted that if counsel had informed him of his options of either seeking specific performance of the plea agreement or withdrawing his plea, he would have withdrawn his plea and gone to trial on the original charge (*id.* at 27).  The state court found as fact that at the hearing held on February 19, 2003, Petitioner agreed to the modification of the conditions of his supervision to include GPS monitoring; therefore, his claim was without merit (*id.*).

With regard to the state court's finding that Petitioner agreed to the electronic monitoring, the undersigned concludes that the state court record contains clear and convincing evidence to rebut this finding.  Petitioner attached a transcript of the February 19, 2003 hearing as an exhibit to his Rule 3.850 motion (*see* Doc. 1, Ex. A at 30, 48–62), and the state court cited to the transcript in its order and attached a copy of it (*id.* at 142, 146–60).  At the hearing on the State's notice to have Petitioner declared a sexual predator, the State announced that it was also seeking to change Petitioner's "status" from community control to probation, with an added condition that Petitioner be subject to electronic monitoring with a "passive GPS system" (Doc. 11, Ex. A at 50, 54–58).  The following exchange occurred:

THE COURT:  Before I could change his sentence agreed to by a plea, absent some sort of violation being filed or something being done, it would be illegal for me to do it.  If he violated it, it would be a nullity, and you'd never get a hearing on it.  I don't know what your reasoning is, and I might concur one hundred percent, but the problem is I can't just jump up and change the—you're asking me to change the plea, and I can't do that.

MR. HOUSE [for the State]:  Unless Mr. Honrine agreed to go from community control to probation.  I guess he could voluntarily change his status.

THE COURT:  They want to change your status, and I'm not sure what they want to change it to.  They want to change you to probation, but they want to change you to GPS probation.

CHIP WATTS [Petitioner's community control supervisor]:  Yes, sir.  It means an ankle bracelet that the GPS unit can track his every movement.

THE COURT:  What it amounts to is they want to slap an ankle bracelet on you and when you go somewhere, he shoots up to a satellite, and they know where you're walking around at.

FRED EUGENE HONRINE:  That don't [sic] bother me, I'm not going to do anything wrong.

THE COURT:  I don't care whether you do anything wrong or not, that's your choice.  I'm telling you this changes your—you're on community control right now, I guess you don't have an ankle bracelet?

FRED EUGENE HONRINE:  No, sir.

THE COURT:  Well, this is much more restrictive.  If you decide to cut that ankle bracelet off, bingo, you violate.  What are the limitation[s] under that passive GPS?

CHIP WATTS:  We would ask that a strict curfew be enforced, allowing the supervising officer to set it.

RANDY HOWELL [Mr. Watts' supervisor]:  It's normally 6:00 p.m. to 6:00 a.m.

THE COURT:  In other words, he's in his house 6:00 p.m. to 6:00 a.m.  You're in your house 6:00 p.m. to 6:00 a.m.

RANDY HOWELL:  He has his normal conditions, a thousand feet away from the schools and day care, play grounds that sort of thing.

THE COURT:  Where do you live?

FRED EUGENE HONRINE:  In Altha.  I live a mile away from the school.

THE COURT:  You're in a heap of trouble.  How many times do you go by that school a day?

FRED EUGENE HONRINE:  I don't, only time I go by is on Monday night when I go to class.

THE COURT:  Bingo, you just violated.

RANDY HOWELL:  On the GPS it would show that, you're correct there.

MR. REDMON [Petitioner's counsel]:  The only other question I would have is the curfew is a 6:00 p.m. to 6:00 a.m. curfew, that's what he's doing now as far as house arrest.

RANDY HOWELL:  It's more restrictive than that probably.

FRED EUGENE HONRINE:  I'm in by 5:00 every night.

THE COURT:  Well, I don't have a problem if he doesn't have one.

FRED EUGENE HONRINE:  Well, I don't want to get violated if I drive by the school.

THE COURT:  I don't have a problem if he doesn't have a problem.  I think it would be illegal for me to change the plea absent his consent.  Y'all are going to have to sit down and go over this step-by-step.  If he wants to do it, fine by me.  If he doesn't want to do it, then you're going to have to file some sort of motion.

MR. REDMON:  I agree.  I would like for him to know more about it too.  Him raising the point about him driving by the school.

FRED EUGENE HONRINE:  **If that violates me, I don't want to do it.**  I live in Altha, I don't have no other way of going.

RANDY HOWELL:  Like he just said, it's going to show him coming within a thousand feet of a school if he goes on that road.

THE COURT:  If I say that I'm going to do it, and he drives by the school and you violate him, there's no way that violation is going to stick.  If he's going to do it, let's do it legal so that if he violates, then you can have a legitimate violation and a hearing on it.

FRED EUGENE HONRINE:  **I'm not going to do it then.**  I work in construction and I have to go to the hardware, and that's less than a thousand feet from the school.  **I'm not going to do it.**

THE COURT:  I'm not ruling on the matter of your passive GPS because I think it would amend the plea and absent his concurrence, it can't be done.  Y'all sit down and agree, and he agrees with it, fine.

(Doc. 11, Ex. A at 55–58) (emphasis added).  Although Petitioner initially stated that he had no objection to modifying his sentence to add a condition of electronic monitoring, upon further discussion of the restrictions that this condition would impose and the likelihood that the added condition would increase the chance of a violation, Petitioner clearly and repeatedly stated that he did not agree to the additional condition.  Because the state court's factual finding that Petitioner agreed to the addition of electronic monitoring is clearly and convincingly refuted by the record, that finding is not entitled to deference.  Furthermore, because this factual finding was the sole basis for the state court's denial of Petitioner's claim, the undersigned concludes that the state court's adjudication of Petitioner's ineffective assistance of counsel claim resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the Rule 3.850 proceeding.  Therefore, the decision is not entitled to deference, pursuant to 28 U.S.C. § 2254(d)(2).  The court must now take the next step of conducting an independent review of the merits of Petitioner's ineffective assistance of counsel claim.  *See* Panetti, 127 S. Ct. at 2858; Jones, 469 F.3d 1216.

To determine whether counsel performed deficiently by failing to advise Petitioner that the State's seeking sexual predator designation and addition of the electronic monitoring condition invalidated the plea, the court must assess whether there was a legally sound basis for such advice. With regard to the State's seeking sexual predator designation, under federal law, a defendant need only be advised of the direct consequences of his guilty plea; advising a defendant of the collateral consequences of a guilty plea is not constitutionally required.  *See* United States v. Campbell, 778

F.2d 764, 768 (11th Cir. 1985) (holding that counsel is not constitutionally ineffective for failing to inform a defendant of the "collateral consequences" of a guilty plea); Pickard v. Thompson, 170 Fed. Appx. 86, 87 (11th Cir. 2006) (same).   As previously discussed, the requirements of The Florida Sexual Predators Act are remedial, not punitive; therefore, sexual predator designation is a collateral, rather than a direct, consequence of a guilty plea.  *See* State v. Partlow, 840 So. 2d 1040, 1043 (Fla. 2003) (sexual offender registration requirement is a collateral consequence of a plea to a sexual offense because the registration requirement has absolutely no effect on the range of the defendant's punishment for the crime); Delarosa v. State, 913 So. 2d 76 (Fla. 3d DCA 2005) (designation as sexual offender or sexual predator was collateral, not direct, consequence of guilty plea about which defendant did not have to be advised); Gunn v. State, 841 So. 2d 629, 631 (Fla. 2d DCA 2003) (confirming that designation as either sexual offender or predator is collateral consequence about which defendant does not have to be advised at time of plea). Donovan v. State, 773 So. 2d 1264, 1265 (Fla. 5th DCA 2000); LaMonica v. State, 732 So. 2d 1175 (Fla. 4th DCA 1999); Collie v. State, 710 So. 2d 1000 (Fla. 2d DCA 1998) (sexual predator designation was collateral consequence of guilty plea).  Because the requirements attendant to Florida's sexual predator designation are collateral consequences of a guilty plea, the State's seeking such designation, even though it was not part of the negotiated plea, did not render Petitioner's plea involuntary or otherwise invalidate the plea agreement.

Likewise, Petitioner has failed to demonstrate that counsel's failure to advise him that the addition of the electronic monitoring condition invalidated the plea was unreasonable.  As previously discussed, at the "modification" hearing on February 19, 2003, when the State requested the additional condition, the judge was unequivocal in his position that he would not add the electronic monitoring condition without Petitioner's consent, and the judge specifically stated that he would not rule on the State's request for that reason (*id.* at 58).  Since the judge explicitly stated that he was not granting the State's request at that time, there was no reasonable basis for counsel to argue that the plea agreement was breached or to advise Petitioner that he had a basis to withdraw his plea.  Furthermore, when the "modification" order was entered eight (8) months later on October 15, 2003, there is no indication in the record that counsel was notified that the order had been issued.  Although the record shows that Petitioner's counsel was aware of the addition of electronic

monitoring condition during the revocation proceedings that were initiated in May of 2004, by that time the issue of the legality of the addition of electronic monitoring was moot because Petitioner admitted he violated an unrelated condition of his supervision on April 29, 2004, and his original sentence was modified to only a term of imprisonment with no probation to follow and no other conditions imposed (*see id.* at 80, 84–88).   Therefore, the undersigned concludes that Petitioner failed to demonstrate that his counsel's failure challenge the addition of the electronic monitoring condition on the ground that it invalidated the plea, or counsel's failure to at least advise him that the addition rendered his plea involuntary, was unreasonable.

Additionally, Petitioner has failed to demonstrate he suffered prejudice as a result of counsel's failure to advise him that the addition of the electronic monitoring condition invalidated his plea or counsel's failure to challenge the additional condition on the ground that it rendered his plea involuntary.   Even if counsel was aware of the addition of the electronic monitoring condition in October of 2003, when the court issued the "modification" order, Petitioner has failed to establish a reasonable probability that the trial court would have permitted him to withdraw his plea as the appropriate remedy for the alleged violation of the plea agreement.   In Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427 (1971), the Supreme Court outlined two remedies available to rectify the government's breach of a plea agreement:   (1) withdrawal of the guilty plea, or (2) specific performance of the agreement, "in which case petitioner should be resentenced by a different judge."   404 U.S. at 263; *see also* United States v. Al-Arian, 514 F.3d 1184, 1190 (11th Cir. 2008) (citing Santobello); United States v. Johnson, 132 F.3d 628, 631 (11th Cir. 1998) (citing Santobello); United States v. Taylor, 77 F.3d 368, 371–72 (11th Cir. 1996); United States v. Rewis, 969 F.2d 985, 988-89 (11th Cir. 1992); United States v. Foster, 889 F.2d 1049, 1056 (11th Cir. 1989); United States v. Barnes, 278 F.3d 644, 649 (6th Cir. 2002).   The choice of remedies is within the sentencing court's discretion (*see* Santobello, *supra*; Al-Arian, *supra*), but specific performance of the agreement, as opposed to withdrawal of the guilty plea, is the favored remedy in the Eleventh Circuit.   *See* Johnson, *supra*; United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir. 1992) (citing Santobello).   Furthermore, "[s]pecific performance is particularly appropriate where [ ] no question exists that the plea was knowingly and voluntarily entered." Johnson, 132 F.3d at 631 (citing United States v. Tobon-Hernandez, 845 F.2d 277, 280–81 (11th

Cir. 1988)).  Florida courts also follow the rule that the sentencing court must assess the remedy due for the breach, either specific performance or withdrawal of the plea.  *See* Hunt v. State, 613 So. 2d 893, 899 (Fla. 1992).  Tillman v. State, 522 So. 2d 14 (Fla. 1988).  Some Florida appellate courts follow the rule that a defendant's choice of remedies should be followed, especially where the other remedy would not remedy the defendant's loss (*see* McCullough v. State, 974 So. 2d 1214, 1218 (Fla. 2d DCA 2008); Mehl v. State, 958 So. 2d 465, 468 (Fla. 4th DCA 2007); Buffa v. State, 641 So. 2d 474, 475 (Fla. 3d DCA 1994); Spencer v. State, 623 So. 2d 1211, 1213 (Fla. 4th DCA 1993)); however, the Florida Supreme Court has followed the rule that withdrawal of the plea is not the proper remedy where the plea is otherwise shown to be voluntary (*see* Hunt, Tillman, *supra*; *see also* Mehl, *supra*.).

In the instant case, the record contains objective evidence that the electronic monitoring condition played no role in Petitioner's decision to plead guilty and forego a trial.  Petitioner was charged with sexual battery of a five-year old girl, which was a capital felony.  The plea agreement permitted him to plead no contest to a first degree felony, which carried a maximum term of imprisonment of thirty (30) years.  *See* Fla. Stat. § 775.082.  The plea agreement further permitted him to avoid any term of imprisonment and receive a sentence of twenty-two (22) years of supervision.  It is thus clear that objectively speaking, the plea agreement was of exceptional value to Petitioner, even if it had included an electronic monitoring requirement (even the trial judge at Petitioner's revocation hearing characterized the plea deal as "a sensational break" in Petitioner's case (Doc. 11, Ex. A at 79)).

Furthermore, in Petitioner's Rule 3.850 motion, he states that the reason he entered the plea was twofold:  (1) he had no other viable option in light of defense counsel's failure to investigate any defense to the sexual battery charge, and (2) he wanted to protect the victim's privacy as well as his own (*see* Doc. 11, Ex. A at 22, 24).  Petitioner states there was no physical evidence to support the charge, and counsel acknowledged in open court during a pre-trial hearing that he did not know how to defend the charge (*id.* at 22).  Petitioner states counsel should have investigated a defense based upon lack of physical evidence, as well as motivation to fabricate allegations of abuse on the part of the victim's paternal grandmother, and if counsel had investigated such a defense, Petitioner would have gone to trial (*id.*).  Petitioner did not mention omission of the electronic monitoring

condition as playing any role in his decision to accept the plea offer.  Furthermore, at the "modification" hearing on February 19, 2003, Petitioner did not initially oppose electronic monitoring (*see* excerpt from revocation hearing set forth *supra*), which would not likely have been the case if Petitioner had placed particular emphasis on removal of this condition from his negotiated plea. This objective evidence shows that Petitioner did not place particular reliance on the removal of the electronic monitoring condition in negotiating the agreement to enter a plea and forego a trial on the original sexual battery charge.

The record further shows that Petitioner's plea was otherwise voluntary.  The standard plea, waiver and consent form, pursuant to which Petitioner entered his plea, provided, generally, that: Petitioner had been advised of the nature of the charge and had sufficient time to discuss it with his attorney; he had not been promised leniency, except "as embodied in this plea agreement on this form;"[5] he understood the rights he was waiving by entering the plea; he waived his right to appeal except with respect to an illegal sentence; he freely and voluntarily entered the plea; he agreed that the State could prove a prima facie case against him; and he had had the benefit of counsel with respect to all matters set forth in the plea (*id.* at 41–42).  Petitioner signed the plea, stating that he was thirty-two (32) years old and was educated through the eleventh (11th) grade (*id.* at 42).  The judge found that the plea was freely and voluntarily made, and approved and accepted it (*id.*).  This evidence shows that Petitioner's plea was otherwise voluntary; therefore, Petitioner has failed to show a reasonable probability that the state court would have permitted him to withdraw his plea if counsel or Petitioner had made such a motion.  Therefore Petitioner has failed to show a reasonable probability of a different outcome if counsel had challenged the validity of the plea or advised Petitioner to do so.

Finally, the 2004 revocation of Petitioner's probation and modification of his sentence to a term of imprisonment with no probation to follow and no conditions imposed, renders moot any claim of prejudice resulting from counsel's alleged error, and renders moot the federal habeas relief

---

[5]As previously discussed, the two-page written plea agreement states, "the plea agreement is as follows:  2 years community control followed by 20 yrs. probation; no contact with victim; sexual offender conditions; fine, costs, community service hours at court's discretion" (Doc. 11, Ex. A at 41).  Thus, removal of the electronic monitoring condition was not "embodied in [the] plea agreement on [the] form."

to which Petitioner would otherwise be entitled, that is, an order vacating Petitioner's sentence on the original conviction and directing the State to resentence him in accordance with the plea agreement.  *See* Harrison v. Jones, 880 F.2d 1279, 1282–84 (11th Cir. 1989) (habeas petitioner established prejudice from counsel's failure to challenge convictions used to enhance sentence by showing that if counsel had challenged enhancement at sentencing hearing, there was reasonable probability that challenge would have been successful; therefore, petitioner was entitled to habeas relief in the form of order vacating sentence and directing state to grant petitioner new sentencing hearing within ninety (90) days).  Therefore, Petitioner is not entitled to issuance of the writ on Ground Two.

> C.   Ground three:  Counsel was ineffective for failing to ensure due process in the revocation proceeding to protect the Defendant's conditional liberty interest.

Petitioner states he understood at the time of his plea that he would be allowed to maintain his liberty as long as he abided by the terms of the plea agreement (Doc. 1 at 3).  He contends the infraction for which his probation was violated was not a willful or substantial violation of the terms of his probation (*id.*).  Petitioner claims that his counsel provided ineffective assistance at the revocation hearing by failing to contest the violation on the ground that it did not constitute a willful and substantial violation of the terms of his probation (*id.*).

> 1.    Clearly Established Supreme Court Law

The clearly established standard for evaluating claims of ineffective assistance of counsel is set forth *supra*.

> 2.    Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 motion (Doc. 11, Ex. A at 10, 12–15).  The state court found as fact that at the revocation hearing on July 7, 2004, Petitioner admitted that he violated his probation (Doc. 11, Ex. A at 143).  The court further found that Petitioner was allowed to provide the court with any information he wanted the court to know regarding the violation (*id.*).  Therefore, the state court concluded, Petitioner's claim that counsel failed to ensure that his due process rights were protected at the hearing was without merit (*id.*).

Petitioner does not dispute the state court's factual findings, and the findings are supported by the transcript of the revocation hearing (*see* Doc. 11, Ex. A at 73–78).  Indeed, in Petitioner's

Rule 3.850 motion, Petitioner admits that he "technically" violated the condition of his probation prohibiting him from possessing pornography because he did, in fact, possess the videotape that he was accused of possessing (*see* Doc. 11, Ex. A at 25).  Therefore, the state court's factual findings are presumed correct.

Additionally, the state court's reasoning did not contradict Strickland.  The state court determined that Petitioner was afforded due process at the revocation hearing; therefore, Petitioner's claim that his counsel failed to protect his liberty interests was without merit.  This reasoning does not contradict the requirement that Petitioner show that counsel performed unreasonably at the revocation hearing and, but for counsel's performance, there is a reasonable probability that the outcome of the hearing would have been different.  Furthermore, Petitioner has not shown that the state court reached an opposite conclusion from the United States Supreme Court on a question of law, and Petitioner has not identified any United States Supreme Court case with a set of materially indistinguishable facts that was decided differently from his case, nor is the court aware of any such case.  Therefore, Petitioner has failed to show that the state court's decision was contrary to Supreme Court law.

To qualify for relief, Petitioner must therefore demonstrate that the state court's decision constituted an unreasonable application of Strickland.  Petitioner contends his counsel should have argued that although Petitioner "technically" violated a condition of his probation, there was no evidence that the violation was substantial, therefore, revocation was unwarranted (*see* Doc. 1 at 3; Doc. 11, Ex. A at 24–25).  He additionally contended in his Rule 3.850 motion that counsel should have argued that the technical violation was not willful, based upon Petitioner's testimony that he did not view the videotape because his VCR was broken, and he did not know from the tape's packaging that its contents violated the no-pornography condition of his probation (*see* Doc. 11, Ex. A at 26).

Under Florida law, the trial court was required to determine whether the violation was willful and substantial and supported by the greater weight of the evidence or, stated differently, whether Petitioner made reasonable efforts to comply with the terms and conditions of probation.  *See* State v. Carter, 835 So. 2d 259, 262 (Fla. 2002); *see also* Burgin v. State, 623 So. 2d 575, 576 (Fla. 1st DCA 1993) ("A trial court is vested with broad discretion in determining whether a probationer has

violated a condition of the probation.").  In making this determination, the trial court was required to assess the alleged violation in the context of a defendant's case and consider each violation on a case-by-case basis.  Carter, 835 So. 2d 261.

At the revocation hearing, Petitioner admitted that he possessed the videotape identified by his probation officer in the violation report and supporting affidavit as titled, "Girls Gone Wild, Volume 1, Get Educated, College Girls Exposed" (*see* Doc. 11, Ex. A at 67, 68, 73–75), Petitioner admitted that a friend brought him the movie, and he put it under his mattress because his niece sometimes visited the house (*see id.* at 75).  The presiding judge advised the parties that he viewed a portion of the videotape to determine its content (*see id.* at 73).  Petitioner's counsel then presented testimony from Petitioner's probation officer that Petitioner had otherwise followed the conditions of his probation (*id.* at 78).  Counsel informed the court that on every occasion when he and Petitioner met, Petitioner told him that he did not view the videotape (*id.* at 76), and counsel made the following argument that Petitioner's violation was not willful: "This wasn't a violation such that he intended to be [sic], it was a situation that there was a mistake made on his part" (*id.* at 78).  The court considered this evidence in the context of the nature of Petitioner's original offense, that is, attempted sexual battery of a female child, as well as the nature of the violation as involving sexual material, and determined that Petitioner admitted the violation, and it was substantial (*see id.* at 79–80).

Initially, Petitioner failed to show that counsel had a basis for arguing that the violation was not willful.  Florida courts have deemed evidence insufficient to show a willful violation where the violation is due to negligence or ineptitude or where a probationer made reasonable efforts to comply with the terms of probation.  *See* Michael v. State, 992 So. 2d 367, 368 (Fla. 1st DCA 2008) (probationer did not willfully violate probation condition that required probationer to write letters to credit card companies assuming responsibility for debts he had run up fraudulently on victim's account; assistant state attorney had not furnished names of credit card companies with pertinent account numbers either to probationer or to his probation officer, and probationer sought unsuccessfully to obtain necessary information from probation officer and from probationer's lawyer); Meade v. State, 799 So. 2d 430, 432–33 (Fla. 1st DCA 2001) (evidence that probationer failed to attend two classes because of illness and transportation problems was insufficient to

establish willful violation); Padelt v. State, 793 So. 2d 30, 31 (Fla. 2d DCA 2001) (community control revocation was not justified by probationer's brief departure from the drug treatment facility, where probationer did not purposely abscond or leave the treatment program, or otherwise violate conditions of community control but, rather, left the facility out of desire to avoid embarrassment of arrest in presence of other program participants, based on probationer's misunderstanding that he had been discharged from the program); Robinson v. State, 773 So. 2d 566, 567 (Fla. 2d DCA 2000) (evidence of probationer's failure to pay costs of supervision and restitution, in the absence of evidence that he had the ability to pay, was inadequate to prove willful violation); Jones v. State, 730 So. 2d 349, 350 (Fla. 4th DCA 1999) (probationer's failure to obtain consent form from probation officer prior to change of residence was not willful and deliberate act); Garcia v. State, 701 So. 2d 607 (Fla. 2d DCA 1997) (probationer's failure to attend appointment because he lacked transportation and asked probation officer to reschedule, and probationer's failure to attend two more appointments due to lack of funds to pay attendance fee indicated that probationer was making reasonable efforts to follow instructions of probation officer); Van Wagner v. State, 677 So. 2d 314 (Fla. 1st DCA 1996) (evidence did not support finding that probationer "willfully" violated probation by failing to provide verifiable residence to first probation officer, and by failing to comply with that officer's instruction to contact second probation officer; although for time probationer had no fixed abode or address to give, he did not withhold information he had from first officer, probationer made repeated attempts to establish communication with second officer prior to filing of affidavit of violation of probation, it was not shown that probationer made any change of residence without first officer's consent, and probationer's penury, homelessness, and unemployment were not intentional); Thomas v. State, 672 So. 2d 587 (Fla. 4th DCA 1996) (concluding that inept and negligent failure of probationer to return to halfway house on time did not amount to willful violation of probation); Stevens v. State, 599 So. 2d 254 (Fla. 3d DCA 1992) (holding that there was no willful or deliberate violation of probation where probationer was absent from meeting of sex offender program due to inept and negligent conduct); Thorpe v. State, 642 So. 2d 629 (Fla. 1st DCA 1994) (probationer made reasonable efforts to comply with condition of probation requiring that she transfer condominium to victim as restitution where probationer attempted to transfer title to condominium and offered to pay cash over period of time to cure any

deficiency in equity, but victim rejected offer); Shaw v. State, 391 So. 2d 754 (Fla. 5th DCA 1980) (no willful violation of condition requiring personal delivery of a report when timely completed report was not delivered because of probationer's lack of transportation and subsequent incarceration for an unrelated offense); Gardner v. State, 365 So. 2d 1053 (Fla. 4th DCA 1978) (no willful violation of condition that probationer leave Florida proven, because his car broke down).

In the instant case, the evidence showed that Petitioner's possession of the "Girls Gone Wild" videotape was knowing and willful.  Petitioner admitted that upon receiving the videotape from a friend, he did not dispose of it, but placed it under his mattress.  Additionally, the title of the videotape and Petitioner's statement as to the reason he placed it under the mattress, that is, so that his niece would not see it when she visited the house, evidences his knowledge of the sexual content of the videotape.  In light of this evidence, and the absence of any evidence that Petitioner's possession of the videotape was due to his negligence or ineptitude or that he made any attempt to dispose of the videotape, Petitioner failed to establish that counsel performed unreasonably by failing to argue that Petitioner's possession of the videotape was not willful.  Furthermore, the trial court was aware, through the testimony of Petitioner and his probation officer, that Petitioner had otherwise complied with the conditions of his probation, but this was obviously insufficient to overcome the court's firmly held opinion that the nature of Petitioner's conviction and the nature of the violation rendered the violation substantial, not merely technical.  Therefore, Petitioner failed to show a reasonable probability that the outcome of the revocation hearing would have been different if counsel had argued that the violation was not substantial.  *See* Brown v. State, 949 So. 2d 1085 (Fla. 5th DCA 2007) (evidence supported finding that defendant's possession of three disks, that were of an obscene or pornographic nature, was a willful and substantial violation of probation condition that required him to refrain from possessing any obscene, pornographic, or sexually stimulating visual or auditory material, and was a proper ground for revoking probation imposed for sexual battery; while testimony was given that the disks, which were found under defendant's bed, belonged to defendant's son, defendant failed to properly dispose of them).

Petitioner has failed to show that the state court's denial of his ineffective assistance of counsel claim was an unreasonable application of Strickland.  Therefore, he is not entitled to federal habeas relief on this claim.

Accordingly, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 13<u>th</u> day of March 2009.


<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**